W. B. SHARPLEY v. B. T. REESE.

**Sale of Manufactured Article — Special Warranty — Caveat Emptor, When Applied.**

The manufacturer of goods who sells same is bound, without special warranty, to furnish an article reasonably sufficient for the purpose for which it is sold, but when the purchaser elects to take the article, after notice of defects and without warranty, the doctrine of *caveat emptor* applies.[1]

Suit by appellee, in the Circuit Court of Monroe county, against appellant to recover the sum of $100, the purchase price of a cotton

---

[1]

No particular form of words is necessary to make a warranty of quality; any express affirmation as to the quality of the thing sold is sufficient. Kinley *v.* Fitzpatrick, 4 How. 59.

Any affirmation or representation in relation to the article sold, if it be intended to have the effect of a warranty, or if it be intended to induce the purchaser to rely on it in order to effect a sale, and he actually does rely on it, is sufficient to create a warranty, although the seller endeavored

press sold him.   From verdict and judgment for plaintiff defendant appeals.

*Affirmed.*

The opinion of the court states the facts.

Appealed from Circuit Court, Monroe county, J. W. Buchanan, Judge.

Affirmed, February 4, 1884.

*Attorneys for appellant, Houston & Reynolds.*

*Attorneys for appellee, Sykes & Bristow.*

Brief for appellant:

\*   \*   \*   It will be noted that Reese made no objection to Sharpley taking the press away before the time agreed upon, and that he made no offer to have the repairs and alterations made. Reese warranted the press; that it would pack a bale with one mule. The press was tried by Sharpley and proved valueless.   The defects were not alone those which were stated at the time the contract was entered into, but others, and mainly want of power.   It was taken down, laid aside, and offered to be returned to Reese. \*   \*   \*

If the taking of the press by Sharpley was tortious, and it could not be if he took it under the *bona fide* but erroneous belief that he had purchased it, his offer to return the property whence he had taken it and put it up and to pay $25 to $40, was a condonation of the taking, and he could not in an action of trover be made liable

by the use of the language he employed to guard against making a warranty. Otts *v.* Alderson, 10 S. & M. 476.

A manufacturer impliedly warrants that machinery built by him will answer the purpose for which it was constructed; and if it but imperfectly do so he cannot recover the purchase money.   Brown *v.* Murphee, 31 Miss. 91.

As a general rule a purchaser of personal property buys at his own risk, unless the seller gives an express warranty, or the law implies one from the circumstances of the case, or unless the seller be guilty of a fraudulent representation or concealment in respect to a material inducement to the sale. Otts *v.* Alderson, 10 S. & M. 476; Simmons *v.* Cutreer, 12 S. & M. 584.

for the value of the press.    Witherspoon v. Blewett, 47 Miss. 570.
\* \* \*

If the press was valueless as a cotton press, and there was a warranty, express or implied, then there should have been no recovery of the amount of the price agreed to be paid.    The warranty and breach of that warranty and offer to return the press was a defense to the action.    If there was a wrongful taking and conversion of the property, and plaintiff had waived the tort and sued in assumpsit, he could not recover, because the tortfeasor, Sharpley, had not converted the property (the press) into money or other property, nor had he mingled it with his own, nor had he consumed it in his use nor changed its form.    Evans v. Miller, 58 Miss. 125.

The court erred in the instructions given for the plaintiff.    The first charge is to this effect:    That if there was a contract between Reese, Ursery, and Sharpley, that Ursery was to construct a press like the one in controversy for $100 for Sharpley, that it was to be completed by a certain time, and if not so completed, that Sharpley was to have the press sued for in lieu of the one contracted for, and that Sharpley was told that the press would not suit him unless certain changes were made, which Reese agreed to make, and that Sharpley before the time stipulated for the completion of the press took the press sued for away and converted it to a beneficial use, without the consent and in the absence of Reese, and that Reese demanded pay for the press so carried away; this constitutes a waiver by both parties of the delay and of the repairs originally contracted for, and Sharpley is liable for the *price* of the press.

The taking of the press by Sharpley may have estopped him to deny that there was a sale, but did not waive any defense which he had under that contract of sale.    He could still insist upon his warranty and a breach of that warranty as a defense to the action; he could still insist upon the repairs and alterations agreed to be made, and if not made, reduce the price agreed to be paid by the amount necessary to make them.

The charge instructed the jury that the taking away of the press by Sharpley before the time agreed upon for him to take it made a sale of the press to Sharpley, but cut him off from all the defenses which he would have had under that contract.    If Sharpley had been sued in trover or in case for the wrongful taking of the press he could, if the taking was wrongful, have been held only for the value of the thing taken, and in this case the press is shown to have

been valueless.    The court, in the first charge, directs that the wrongful taking waived all the defenses which Sharpley had under the contract and made him liable for *the price* agreed to be paid, though the testimony might show that it was not worth anything. If the charge had directed the jury that the taking under the circumstances supposed made Sharpley liable for the *value* of the press, not for the *price* agreed to be paid, this would not have been objectionable, if the action had been trover or case.

Even if this charge was not erroneous, the verdict of the jury was wrong.    To sustain a verdict under this charge the testimony must show " that Sharpley converted the press to some beneficial use."    It was not converted to any beneficial use.    It was put up and an attempt made to use it, but it would not answer the purpose.

The same objections apply to the second charge, and there are additional objections to it.    It directs the jury that if Sharpley took away the press before the time stipulated he cannot complain of its " inefficiency," and must pay the price *agreed* to be paid therefor.    That the taking of the press made a contract of sale, and yet the party was cut off from making all the defenses which the law gave him when sued for the enforcement of the contract.

The third charge should not have been given.    It does not state the law correctly as to the warranty implied in the sale of an article by the manufacturer, the warranty implied as to the quality of a machine when sold by the manufacturer.    A manufacturer impliedly warrants that machinery sold by him will be reasonably fit and proper for the purpose and use for which it was constructed so far as an article of the kind can be.    Brown *v.* Murphee, 31 Miss. 91; Otts *v.* Alderson, 10 S. & M. 476; Benjamin on Sales, § 657.
*    *    *

Brief for appellees:

If there was an error by the court in this matter, it was certainly not in ruling or charging the jury in *our* favor.    We think the court went to the extreme limit of the law, if not beyond, in charging for the appellant.    *    *    *

The transaction was a sale of the press to Sharpley *at the price stipulated,* provided Ursery did not make a similar press by a time stipulated.    Sharpley by his conduct in taking the press the next day without our consent waived this condition and elected to take the press at once.    By suing for the *price agreed on* we also waive

the condition, and agree to hold the transaction as a simple *sale* of the article for an agreed *price.*

But more than this. At the time of the trade we distinctly informed Sharpley that as the press then stood it would not suit him, that it was insufficient and defective on account of certain specified defects. There was an express *refusal* on our part to *warrant the press as it then was.* And it was expressly stipulated that if, on Ursery's failing to complete the other press, Sharpley under the agreement should take the press sued for, it was to be first *repaired and modified* and *"made all right."*

But Sharpley, by his conduct in taking the press without our knowledge or consent, waived all the defects, released us from the obligation to "make all the necessary repairs and make the press all right," took it, not only without warranty on our part, but in the face of our statements as to its insufficiency made to him, and relied on his own judgment as a " former mechanic," an *expert.*

In such case he is overwhelmingly governed by the rule of *caveat emptor.* He did not rely upon the vendor's judgment, but takes it with the warning of the vendor that it is insufficient for the purposes for which it was made sounding in his ear. Chitty on Contracts (10th Am. ed.), 476, 484.

" He must charge his loss to a presumptuous reliance on his own judgment and his improvidence in failing to obtain a warranty against defects to which the property was in its nature liable." Otts *v.* Alderson, 10 S. & M. 481.

Sharpley will not be allowed, after thus presumptuously relying on his own judgment, to come up and say that there were *other* defects *outside* of those named, which rendered the press defective, and that even if the deficiencies named had been remedied and repaired, it would still have been deficient.

The vendor is entitled to a fair showing. He distinctly *refuses* to warrant the press as it stands; and if Sharpley takes it he does so at his peril, not only *without* any warranty, express or implied, but in the face of an express *refusal* to warrant. * * *

Defendant's whole case is avowedly based on a *breach of warranty.* We think if anything *can* be proven, we have proven there *was no warranty,* but an *absolute refusal to warrant,* and a purchase by Sharpley in the face of such refusal.

An express warranty excludes the idea of any *implied* warranty. Dyer *v.* Britton, 53 Miss. 277.

*A fortiori,* if the seller, for any cause, refuse to warrant, there can be no pretense for raising an implied warranty. Roderiguez *v.* Habersham, 1 Spears (S. C.), 314; Smith *v.* Bank, Riley Ch. (S. C.) 113; Watson *v.* Boatwright, 1 Rich. (S. C.) 402. * * *

If there was any error in the charges of the court, certainly defendant cannot complain of it. Our charges were so modified and emasculated by the court that the legal propositions leaned, if anything, rather in favor of the defendant, though the jury from all the testimony might well have found that the press, if repaired according to the agreement, would have been all right; and also that Sharpley converted the press to a beneficial use or at least that by his conduct he was estopped to deny it.

The charges given for the defendant, we submit, go beyond the extreme limit of the law in favor of defendant, and he certainly cannot complain of the court. * * *

OPINION.— CHALMERS, J., delivered the opinion of the court:

Reese, who was the patentee of a newly-invented cotton press, offered to construct and deliver one for Sharpley at the price of $100, warranting it in every respect. He had one already constructed and on exhibition which Sharpley desired to take; but this one Reese declined to warrant because defective, but offered to sell it on the same terms with warranty if he could be permitted to remodel and repair it in certain particulars. The next day Sharpley took and carried away the defective press, not only without waiting for the repairs to be made but also without the knowledge or consent of Reese. When sued for the price, $100, he attempted to escape payment or to reduce the price by showing that the machine was *wholly* useless. If it had been so it is by no means clear that he could have escaped payment of the full sum.

He elected to take the press after notice of its defects, and without warranty, and must be bound by the doctrine of *caveat emptor.* True, the manufacturer of goods, without a special warranty, is bound to furnish an article reasonably sufficient for the purpose for which it is sold; but in this case Sharpley must be considered as having elected to take the press without a warranty, advised though he was that it would not in its then condition fulfill the purpose for which he desired it. He could only insist upon a diminution of the price, by having the repairs made

Statement of the Case.

by Reese, and then demonstrating by proof its insufficiency as repaired. This he did not do.

The instructions sufficiently propounded the law and certainly were as favorable to defendant as he could have asked.

*Affirmed.*